[No. 28303. Department Two. July 14, 1941.]

WILLIS T. BATCHELLER, INC., *Plaintiff*, v. WELDEN CON-
STRUCTION COMPANY, *Defendant*, CORNELIUS C.
CHAVELLE, *as Receiver, Respondent,* THE
CITY OF SEATTLE, *Appellant.*[1]

[1]Reported in 115 P. (2d) 696.

*A. C. Van Soelen* and *C. V. Hoard,* for appellant.

*Mifflin & Mifflin,* for respondent.

JEFFERS, J.—This is an appeal by the city of Seattle from a judgment entered on December 3, 1940, denying the city's petition for restitution of certain property claimed by petitioner.

On September 9, 1939, in an action instituted by Willis T. Batcheller, Inc., the superior court for King county made and entered an order appointing Cornelius C. Chavelle receiver of Welden Construction Company. Thereafter the receiver duly qualified, by taking the oath and filing a bond, as required by law.

On September 20, 1939, the court, in the receivership proceeding, made an order that notice be given to the creditors of the construction company that October 20, 1939, would be the last day on which creditors could file claims.

On October 19, 1939, the city filed with the receiver a claim, in substance as follows: That the city of Seattle, department of parks, is the owner of certain described real property, all buildings, fixtures, and appurtenances thereto (then follows a description of the property at Alki point); that, on November 10, 1933, the city of Seattle and its board of park commissioners entered into a concession agreement with Welden Construction Company, under which the corporation was to operate a natatorium upon the above-described property for a period of twenty years from March 1,

1934; that by the agreement, as modified on June 2, 1938, the construction company agreed to pay for such privilege the sum of five hundred dollars per annum from 1939 to 1954, and, in addition, certain delinquent rental in the sum of one thousand dollars, at the rate of two hundred dollars per annum, beginning September 1, 1938, and thereafter on the first days of September, 1939, 1940, 1941, and 1942; that no part of the one thousand dollars has been paid, except the sum of two hundred dollars paid for the year 1938. Then follows a statement relative to insurance.

Paragraph five of the claim states:

"That through the receivership proceedings in the above entitled cause it has become impossible for said corporation to fulfill its obligations under said contract and the city of Seattle and its board of park commissioners elect to treat the unperformed portions of said contract as breached by said corporation and makes its claim against said corporation and Cornelius C. Chavelle, its duly appointed and acting receiver, for damages caused by said breach in the following amounts, which are now due and owing to said city of Seattle and to its department of parks:

"Concession fee $500 per year for the
 years 1940 to 1954, inclusive....... $7,500.00
"Balance on delinquent concession fees. 800.00
"Repairs to buildings and appurtenances 2,500.00
"Fire insurance premiums............ 200.00

"Total......................$11,000.00"

It does not appear from the record that any action was taken upon this claim either by the receiver or the city.

On April 18, 1940, the city served upon the president of the construction company and upon the receiver the following notice:

"You and each of you are hereby notified that the above named defendant, Welden Construction Com-

pany, is in default in the concession fees in the sum of Two Hundred Dollars ($200.00) due September 1st, 1939 and One Hundred Dollars ($100.00) due April 1st, 1940, under the concession agreement dated November 10th, 1933, between said defendant and The City of Seattle and its board of park commissioners and relating to the following described premises: (Then follows a description of the property.)

"You are further notified that if said concession fees be not paid within thirty (30) days from the service of this notice on the above named receiver and the said Welden Construction Company, the city of Seattle and its board of park commissioners will elect to terminate said concession agreement and to enter upon and take possession of said premises, and that any interest of the Welden Construction Company, or its receiver, in improvements made on said premises shall be forfeited to the city of Seattle and its board of park commissioners as liquidated damages without compensation therefor to said Welden Construction Company, or its receiver.

"That any provision of the 'Proof of Claim of The City of Seattle,' filed in the above entitled proceeding October 19, 1939, which is inconsistent herewith is hereby withdrawn.

"Dated this 18 day of April, 1940."

No payments having been made to the city of the claimed delinquent concession installments, on July 23, 1940, the city filed in the receivership proceeding a petition wherein it is alleged that at all times therein mentioned petitioner was and is now the owner of certain described real property (then follows a description of the property); that, on November 10, 1933, the city of Seattle, through its board of park commissioners, entered into the concession agreement hereinbefore referred to. The petition further alleges that the agreement provided for a concession fee of one thousand dollars per year, beginning on March 1, 1934; that thereafter the concessionaire failed to pay the concession fee due for the year 1938, and, on June 2, 1938, the

board of park commissioners of the city, pursuant to the request of the concessionaire, reduced the concession fee to the sum of five hundred dollars per year, from 1939 to 1954, to be paid in five equal installments of one hundred dollars per month, on April 1st to August 1st, inclusive, of each year; that at such time the concessionaire agreed to pay the delinquent concession fee for the year 1938, in the sum of one thousand dollars, at the rate of two hundred dollars per year, commencing September 1, 1938, and thereafter on the 1st day of September, 1939 to 1942, inclusive; that the concessionaire is in default in the two hundred dollar installment of the delinquent concession fee for 1938, due September 1, 1939, and in the one hundred dollar installments of the current concession fee due on the first days of April, May, June, July, and August, 1940.

The petition then alleges the appointment of Cornelius C. Chavelle as receiver of the construction company, and that he qualified and is now the acting receiver.

The petition then sets out in full paragraph sixteen of the concession agreement, and in view of the fact that this paragraph of the agreement is of particular importance herein, we shall also set it out in full:

"This agreement is made upon the condition that the concessionaire shall perform all covenants and agreements herein set forth to be performed by it, and that if at any time any concession fee, taxes, insurance premiums, and other charges and payments aforesaid, or any of them, or any part thereof, shall become in arrears and unpaid for a period of sixty (60) days after becoming due, if any of the covenants or agreements aforesaid shall not be performed as hereinbefore stipulated and agreed to be performed by said concessionaire, within the period of sixty (60) days after default in performance, the board, at any time thereafter, shall have full right, at its election, upon thirty (30) days' written notice, to enter upon the said premises and

take immediate possession thereof, and bring suit for and collect all concession fees, taxes, insurance premiums, or other charges which shall have accrued up to the time of such entry and thenceforth from the time of such entry this concession agreement shall become void to all intents and purposes whatsoever and this concession agreement, and all improvements made on said premises, shall be forfeited to the city of Seattle and the board as liquidated damages, without compensation therefor to the concessionaire; Provided, also, that for concession fees due and non-performance of other conditions, the city of Seattle and the board may sue at once, but not enter into possession upon forfeiture except as above provided."

The petition further alleges that, on April 18, 1940, the city served the receiver and, also, the concessionaire with the notice hereinbefore set out.

The petition asks that an order of court issue, requiring the construction company and its receiver to show cause why possession of the property heretofore described should not forthwith be restored to petitioner, free and clear of any claim of the construction company or its receiver, and for such other equitable relief as to the court may seem just and equitable.

On July 23, 1940, the court made an order requiring the concessionaire and its receiver to appear before the court on July 26, 1940, to show cause, if any there be, why the petition of the city should not be granted. On July 26th, the receiver appeared specially, and moved to quash the show cause order, which motion was by the court denied.

It is a little difficult from the record to follow the proceedings from here, but it seems that, after the court had overruled the receiver's motion to quash, the matter proceeded even though the receiver had no answer prepared and on file at that time. We gather this from the statement of facts, wherein appears the following:

"THE COURT: State the issues, and then make the offer.

"MR. MIFFLIN: This matter is before the court on the order to show cause issued ex parte by the court on the application of the corporation counsel directed to Cornelius Chavelle, receiver of the defendant Welden Construction Co., who has heretofore been before the court by special appearance on motion to quash of the receiver, which was denied by the court, and which special appearance is respectfully reserved by the receiver. He, still reserving that special appearance, will today or tomorrow serve and file an answer in which the allegations of the petition in so far as they refer to a concession agreement executed November 10, 1933, is admitted. The possession of the Welden Construction Co. under that instrument is admitted. The possession of the receiver as the recognized successor to Welden Construction Co. is further admitted; and affirmatively, it is the position of the receiver, and will be urged in the answer being served and filed, that the city of Seattle has heretofore, by an instrument filed in this receivership proceeding, namely, a proof of claim dated October 19, 1939, exercised one of its two inconsistent remedies, namely, the right of affirmance, and by virtue of that proof of claim has waived the right of disaffirmance. . . .

"Now, it is agreed there is in evidence the concession agreement of November 10, 1933, a so-called modification by an excerpt from the minutes of the park board meeting of June 2, 1938 . . .

"It is further agreed that there is in evidence the city's original proof of claim, which is found in the receivership file dated October 19, 1939, and served and filed about that date; also a notice to pay delinquent concession fees dated April 18, 1940, is in evidence."

Mr. Mifflin then called to the stand the receiver, and, after some preliminary questions, asked him if he had obtained a bid from Barlin & Silver, to which the receiver answered that he had. He was then asked to produce the bid, whereupon Mr. Hoard, counsel for the city, objected that it was immaterial, the issue being

whether or not there had been an election of remedies. After some discussion between counsel and the court, the latter stated:

"The sole question now before the court is whether or not the city has a right to immediate possession of that property, and if it has, the court is not interested in any bids."

In a memorandum opinion filed October 21, 1940, the trial court stated:

"The city of Seattle, by the filing of the first claim with the receiver dated October 19, 1939, waived its rights of forfeiture sought to be asserted by filing the subsequent claim of April 18, 1940. The assertion of the one is an abandonment of the other."

It does not appear from the record that any oral testimony was offered other than that of Mr. Chavelle, or that there was any evidence introduced other than the concession agreement of November 10, 1933; modification memorandum, consisting of an excerpt from the minutes of a meeting of the board of park commissioners held May 26, 1938, attached to a letter from the park board to Mr. A. C. Van Soelen, corporation counsel, under date of July 11, 1940; proof of claim of city (being the claim of October 19, 1939); notice of city to the receiver to pay delinquent concession fees (being the notice of April 19, 1940); and proof of other creditor claims against the construction company.

As we have said, so far as the record shows, respondent, at the time the matter was heard, which seems to have been on September 13, 1940, had not served or filed an answer, but the matter proceeded on the theory that respondent would file an answer in accordance with the statement made by counsel. However, an answer which appears to have been sworn to on September 22, 1940, but which also appears to have been served on the corporation counsel September 16, 1940,

was filed on September 16, 1940. By its answer, respondent admitted that the city and the construction company entered into the concession agreement, as alleged in appellant's petition, but denied that part of paragraph three of the petition which alleged that the natatorium, building, fixtures, and appurtenances, when completed, became the property of the city, pursuant to the terms of the agreement. Paragraph three of the concession agreement provides:

"The said natatorium and building, together with such fixtures and appurtenances as may be constructed or installed therein, shall, when completed, be the property of the city of Seattle for park purposes."

The answer further admits the reduction in the concession fee to five hundred dollars per year, from 1939 to 1954, payable in five equal installments of one hundred dollars per month, on April 1st, May 1st, June 1st, July 1st, and August 1st, of each year, further admitting that by the modification the construction company was obligated to pay the delinquent rental of one thousand dollars, at the rate of two hundred dollars per year, commencing September 1, 1938, and thereafter on the first days of September, 1939, 1940, 1941, and 1942. The answer further admits that respondent was in default in the payment of the concession fee due September 1, 1939.

The answer then sets up six purported affirmative defenses, as follows: (1) That the court has no jurisdiction over the person of the receiver, or the subject matter of the action; (2) that no leave of court was asked or obtained by the city prior to the institution of this proceeding; (3) that by the modification agreement, the city waived any right of forfeiture it might have had under the original agreement, to the delinquent concession fee of one thousand dollars, payable two hundred dollars per month commencing Septem-

ber 1, 1938; (4) that the city is not entitled to any relief under its notice of forfeiture, or to the two hundred dollars due September 1, 1939, as that refers to the second installment of the one thousand dollars delinquent concession fees, referred to in the modification instrument, and as to which the right of forfeiture was waived, and that as to the one hundred dollars due April 1, 1940, this item was not sixty days delinquent at the time of service and filing of the notice of forfeiture; (5) that, by filing the claim of October 19, 1939, the city elected to and did affirm the concession agreement, and by reason thereof waived all rights of forfeiture; (6) that, while the concession agreement contained the provision that "the concessionaire shall not assign or transfer this agreement without the written consent of the board," the agreement nowhere provides against assignment or transfer of the rights of the concessionaire by operation of law; that, by operation of law, the rights heretofore vested in the construction company by the concession agreement passed to and are now owned and held by the receiver.

The city moved to strike the affirmative defenses, and also demurred to such defenses. We find no express ruling in the record on either the motion to strike or the demurrer, but apparently after the pleadings were filed, which was three days after the trial, the court made and entered its memorandum opinion hereinbefore referred to. After the filing of the memorandum opinion, the city moved for judgment notwithstanding the court's decision, which motion was by the court denied on November 16, 1940.

On November 25, 1940, the trial court made and entered findings of fact wherein it is recited, without giving any date, that the matter came on for hearing before the court, and the court having heard and considered evidence introduced on behalf of the respective

parties, made findings of fact from which the court concluded that, by filing its claim of October 19, 1939, the city had waived its right of forfeiture. The court further concluded that, by operation of law, the receiver is the successor of the construction company, and is entitled to all the rights, privileges, and benefits of the construction company, further concluding that the petition of the appellant should be dismissed with prejudice. Judgment was rendered in accordance with the conclusions, and this appeal by the city followed.

Error is assigned upon the holding by the trial court that there was an election of remedies which precludes possession of the property by the city, and in denying possession of the premises to the city.

We are of the opinion that the sole question before the trial court at the time of the hearing, and the sole question considered by it, was whether or not there had been an election of remedies on the part of appellant. It does not appear from the statement of facts that respondent attempted to offer testimony on any issue other than that of an election, except as to the purported claim set up in its sixth affirmative defense, and the trial court sustained an objection to such testimony. No further offer was made.

Respondent makes the contention that, because appellant failed to reply to the affirmative defenses set up in his answer, this affirmative matter must be deemed admitted. We are clearly of the opinion that such a contention in this case is without merit. The answer was not filed until three days after the trial, and in our opinion it sought to introduce into the record facts not considered by the trial court. In view of the statement made by Mr. Mifflin at the opening of the trial, and in view of the statements made by the trial court, the only question in issue was whether or not there had been an election of remedies. Clearly

respondent could not thereafter, by filing an answer, inject new and additional issues into the case.

Appellant contends there can be no election of remedies without the presence of three essential conditions: (1) The existence of two or more remedies at the time of the election; (2) inconsistency between such remedies; (3) a choice of one of them.

Respondent does not deny that the three elements above mentioned must be present before there can be an election, but contends that, the two hundred dollars referred to in the notice of forfeiture being part of the one thousand dollars previously due and delinquent, but in any event, being due and accrued on October 19, 1939, appellant, on October 19, 1939, had at most the "election" to affirm or disaffirm; and that, having on October 19, 1939, filed its proof of claim, in which the two hundred dollars was expressly included, could not six months later, on April 18, 1940, disaffirm as to such two hundred dollars, and seek to use it as a default in aid of its then attempted forfeiture.

The rule contended for is sustained by 18 Am. Jur. 129, § 3; same volume, 132, § 9. In 18 Am. Jur. 133, § 10, we find the following statement:

"If in truth there is only one remedy, and not a choice between two or more, the doctrine of election does not apply, as where a party misconceives his remedy and the one on which he expected to rely was never available to him."

Our own case of *Schotis v. North Coast Stevedoring Co.*, 163 Wash. 305, 1 P. (2d) 221, 78 A. L. R. 1427, sustains the rule last above stated. That the remedies must have been available at the time the claimed election was made, see *Yukon Inv. Co. v. Crescent Meat Co.*, 140 Wash. 136, 248 Pac. 377; and *Johnson v. National Bank of Commerce*, 152 Wash. 47, 277 Pac. 79.

The doctrine of election of remedies is applicable

only where there are available to the litigant at the time of the election, two or more coexistent remedies, which are repugnant and inconsistent. This rule is upon the theory that, of several inconsistent remedies, the pursuit of one necessarily involves or implies the negation of the others. The rule does not apply where the remedies are cumulative merely. 18 Am. Jur. 134, § 11.

Two modes of redress are inconsistent if the assertion of one involves the negation or repudiation of the other, as where one of them admits a state of facts and the other denies the same facts, or where one is founded upon affirmance and the other upon disaffirmance of a voidable transaction. 18 Am. Jur. 135, § 12. The rule relative to inconsistent remedies is also well stated in *Lord v. Wapato Irrigation Co.*, 81 Wash. 561, at pages 583 and 584, 142 Pac. 1172. See, also, *Yukon Inv. Co. v. Crescent Meat Co.*, *supra.*

It is admitted that the only concession fee due October 19, 1939, when this claim was filed, was the two hundred dollar payment due September 1, 1939. Under the contract, appellant could have sued at once for such delinquent concession fee. It could not, however, at that time have filed a notice of forfeiture, because under paragraph 16 of the agreement, appellant was required to wait sixty days after the payment of September 1st became due before it could give notice of forfeiture. This being true, appellant, at the time of filing its claim of October 19, 1939, did not have two remedies available, and therefore there could have been no election. On April 18, 1940, when the notice of forfeiture was given, the payment due September 1, 1939, was, of course, more than sixty days delinquent.

We are also of the opinion that the filing of the claim of October 19, 1939, did not constitute an elec-

tion of remedies, for the further reason that the remedy therein sought was not available to appellant at that time. There was no acceleration clause in the contract, and under no theory we know of could appellant have successfully brought an action on the claim. Whatever the theory of appellant may have been at the time the claim was filed, we are satisfied it was a mistaken one, and that the receiver would have had a good defense to any action seeking to enforce this claim. That the remedy is not available when there is a good defense to it, see *Babcock, Cornish & Co. v. Urquhart,* 53 Wash. 168, 101 Pac. 713; *North Pacific Public Service Co. v. Clark,* 185 Wash. 132, 52 P. (2d) 1255.

 Under the rule announced in *Fotheringham v. Spokane Savings Bank,* 175 Wash. 169, 27 P. (2d) 139, the receiver clearly had a reasonable time in which to elect whether he would abandon the contract or perform according to its terms.

There being in the agreement an express provision against assignment of the contract without the written consent of the park board, the receiver, having no greater rights than the concessionaire had, could not assign the contract without such written consent, but the receiver would have had the right to proceed to operate the property, under order of court, according to the terms of the contract.

Respondent contends that the case of *North Pacific Public Service Co. v. Clark,* 185 Wash. 132, 52 P. (2d) 1255, is not applicable herein, for the reason that in the cited case, when the claim was filed, nothing was due under the contract, while in the instant case, at the time the claim was filed, two hundred dollars was due. This contention is true, but in the cited case this court held there was no election, because there would have been a good defense to the claim, and so in the instant case, in our opinion, the receiver would

have had a good defense to the claim as filed, in a suit to recover thereon.

In the case of *Kimble Motor Car Co. v. Androw,* 125 Wash. 225, 215 Pac. 340, cited by respondent, at the time the claim was filed two remedies were open to the claimant.

We have also examined and considered the authorities cited by respondent, including the case of *Cochran v. Lakota Land & Water Co.,* 171 Wash. 155, 17 P. (2d) 861, 19 P. (2d) 927, and while we are in entire accord with the rules announced in such authorities, we do not think they are applicable to the facts in this case.

In view of the conclusion reached herein, we do not feel called upon to pass upon the question of whether or not the mere filing of a claim with the receiver, when such claim is not acted upon either by the claimant or the receiver, can constitute an election.

Notwithstanding the fact that we are of the opinion the only question which we are called upon to determine is the question of the election of remedies, we have considered the contention of respondent that, in the modification agreement, if such it can be called, appellant did not reserve any right of forfeiture as to the one thousand dollars delinquent concession fees, and that therefore appellant had no right to declare a forfeiture as to the two hundred dollars due September 1, 1939. We are clearly of the opinion it was not the intention of appellant to waive any right of forfeiture it may have had under the original concession agreement, by extending the time of payment of the one thousand dollars delinquent concession fees to a fixed future date, and that it did not waive such right. See *Sleeper v. Bragdon,* 45 Wash. 562, 88 Pac. 1036; *Boger v. Bell,* 84 Wash. 131, 146 Pac. 179.

In view of the admitted facts in this case, and the law applicable thereto, we are of the opinion the trial

court erred in concluding that appellant, in filing the claim of October 19, 1939, had made an election of remedies, and in deciding that appellant was not entitled to the restitution of the premises involved herein. The judgment of the trial court must be and is hereby reversed, with instructions to enter judgment in favor of appellant, as prayed for in its petition.

ROBINSON, C. J., BEALS, SIMPSON, and MILLARD, JJ., concur.